(No. 2261.    Sept. 24, 1919.)

STATE ex rel. BLACK v. AZTEC DITCH CO., et al.

Rehearing Denied Dec. 1, 1919.

### SYLLABUS BY THE COURT

1. In an action of mandamus to require officers of a community ditch to give to relator a specified portion of the waters carried by the ditch, the rights and priorities of the consumers can not be adjudicated, and the individual water users are not necessary or proper parties to the suit. If the rights of the consumers have not been adjudicated or fixed by

State ex rel. Black v. Ditch Co., 25 N. M. 590.

agreement or contract, and are undetermined and unknown, mandamus will not lie, but the parties must first secure an adjudication of the rights of the consumers or water users.

P. 595

2. Where it appeared from the application for the writ that the rights have been fixed by contract and such rights are known and determined, and the answer of the respondents admits such facts, the writ is properly granted, compelling the commissioners to give to relator the water to which he is entitled. P. 596

3. The rights of individual water users cannot be impaired in an action to which they are not made parties and given their day in court. P. 596

4. Community acequias are public acequias within the meaning of section 5731, Code 1915. P. 597

5. Sections 5744, 5759, 5763 and 5765, Code 1915, construed. Held that under these sections it is the duty of the owner of land irrigated by water carried through a community acequia, to labor on the ditch in the maintenance and repair thereof in proportion to the land irrigated; and it is the duty of all owners of land under such ditch to assist in the maintenance and repair of the entire ditch; that a by-law of such community corporation which required all water users under such a ditch system to contribute towards the repair of the ditch in a manner other than that provided by statute is null and void. P. 597

6. A by-law of a private corporation or an ordinance adopted by a municipal corporation in order to be valid must be consistent with the law of the land, and a by-law or ordinance in contravention of a statute of the state is invalid.

P. 597

7. In view of Code 1915, §§ 5744, 5763, 5765, requiring all water users to assist in the repair and maintenance of a community ditch, and section 5759, requiring all persons interested in such ditch to labor thereon in proportion to their land, it is not competent for the members of a community ditch system to adopt a by-law in contravention of such provisions. P. 597

8. A municipal ordinance, to be valid, must be consistent with the law of the land, and an ordinance in contravention of a statute is invalid. P. 597

9. Under Code 1915, § 5731, community acequias are "public acequias." P. 597

Appeal from District Court, San Juan County; Holloman, Judge.

Mandamus by the State, on relation of W. Goff Black,

against the Aztec Ditch Company and others. Judgment for relator, making the alternative writ peremptory and permanent, and defendants appeal. Affirmed.

A. B. RENEHAN, of Santa Fe, and J. M. PALMER, of Farmington, for appellants.

McFIE, EDWARDS & McFIE, of Santa Fe, and W. A. PALMER, of Aztec, for appellee.

### OPINION OF THE COURT

ROBERTS, J. Relator filed an application for an alternative writ of mandamus against the above-named respondents, and in said application alleged that the corporation respondent was a community ditch, organized and existing under the laws of the state of New Mexico; that the individuals named were the commissioners of such community ditch system; that relator was the owner of one-eighth of one share in the ditch of the company, and the owner of a water right carried through the ditch for irrigation and domestic use upon 20 acres of land, which was described. It was alleged: That the total number of shares in the ditch company was 18, and so established upon the trial and not disputed. Each share represented approximately 2 second feet of water. That said commissioners had in the past, and proposed to do so in the future, levied improper assessments for the repair and upkeep of the ditch, in this: That the statutes of the state require that assessments should be levied upon all water users for the maintenance and repair of the ditch, in proportion to the land irrigated, and that all should contribute pro rata to the maintenance and repair of the entire ditch system; that the method pursued by the commissioners and which they proposed to continue, was to levy and collect from the lower shareholders of such ditch greater assessments in proportion to the land irrigated than upon those nearer the intake. (The method followed was to levy upon all equally for the repair of the ditch down to the outlet of the first

consumer, then the first consumer was dropped, and a levy made for the repair down to the second consumer, when he was dropped, and thus the levy was made until the consumer at the lower end was required to pay for the entire repair of the ditch, while those above him on the ditch were assessed only for the repairs and maintenance down to their outlets.)

It was further alleged that the commissioners improperly and unlawfully distributed the water in the ditch system, in that those near the intake of the ditch were permitted to take from the ditch more than they were entitled to use, and such upper users were permitted to waste the water; that the commissioners had not required the installation of proper headgates upon the outlet ditches, so that each consumer would receive only the water to which he was entitled, but permitted the upper consumers to maintain headgates which could not be controlled, or the use of water regulated thereby; and thereby the upper users took out greater quantities of water than they were entitled to and permitted the same to go to waste, with the result that relator and others upon the ditch, at the lower end thereof, were deprived of the use of water. It was further alleged that each member of such community ditch system was entitled to his proportionate share of the water carried by such ditch. The prayer was for an alternative writ of mandamus, commanding respondents to make and levy proper and lawful assessments of work and labor, or of money in lieu thereof, for the proper repair and maintenance of such ditch, and requiring such commissioners to provide proper and lawful headgates and division boxes for the equitable distribution of water among the shareholders, or that cause be shown why said writ should not be made peremptory.

The alternative writ was issued. Respondents answered, admitting that relator was a shareholder in the respondent company and the owner of the land described in the petition; that the ditch in question was a com-

munity ditch; that the total number of shares repre-
sented in the ditch system was 18; that the ditch was
originally constructed in 1882; that it was enlarged
since the enactment of chapter 1, Laws 1895; that the
rights acquired by the enlargement were subject to the
water rights of the original appropriators.  It was
further alleged that by agreement among the original
members so constructing said ditch and acquiring said
water rights, and by custom continued to this date and
further evidenced by voluntary by-laws adopted by the
members of the said ditch and the various boards of
commissioners thereof, each water user was required
in the maintenance of said ditch to labor thereon to the
extent of his interest therein to the lower line of his
land irrigated therefrom, and each and every of such
original members claims such right and duty to be a
part of the water right so as aforesaid appropriated by
him and existing at the time of the enactment of said
chapter 1; that all such water rights are prior in time
and in right to the use of water in time of scarcity to
all water right owners subsequent to the said enlarge-
ment and extension, and that the defendant commis-
sioners are without power or authority to interfere with
or in any manner affect or control such existing and
claimed right, prior to an adjudication and determina-
tion of the individual water rights of the various mem-
bers of said ditch; and assessments have heretofore been
levied in accordance with the water rights of the mem-
bers as hereinabove set out.

The court, after hearing the evidence, entered judg-
ment making the alternative writ premptory and per-
manent, requiring the commissioners to levy equal and
proportionate assessments for the maintenance and repair
of the ditch upon all consumers in proportion to the
land irrigated, and requiring all to contribute for the
maintenance and repair of the entire ditch, to give to
relator his proper proportion of the water in the ditch
as his share or interest bore to the total interest or
shares, to install and maintain proper headgates and

spillways, and to cease permitting water to which consumers were entitled to go to waste, to hold meetings as required by law, keep proper records, etc. To review this judgment this appeal is prosecuted.

The first point made against the judgment is that it was erroneous, in that respondents were required to provide relator with an amount of water proportionate to his stock. The evidence shows, without dispute, that there were 18 shares of stock·represented in the ditch. It is perhaps well to state that under the by-laws of the company the water carried by the ditch was divided into shares, each share representing 2 second feet of water. Presumably the water users, at the time of constructing the ditch, had agreed upon the amount of land each was to irrigate and the volume of water required for such purpose. No question was made below but that the share each owned was all that was required by the various consumers to properly irrigate the land upon which it was to be applied.

[1] Under the point above stated, it is argued that the individual consumers were necessary parties to the suit, and without their having been made such the court was without power to enter the decree in question. There is no merit, however, in this contention. If the rights of the consumers in the water carried by the ditch were uncertain and unsettled, and the proportion which each was entitled to receive was in doubt, relator would not be entitled to the relief prayed, in so far as he asked for a specific proportion of the water. The duties which will be enforced by mandamus must be such as are clearly and peremptorily enjoined by law, and where for any reason the duty to perform the act is doubtful the obligation is not imperative and the applicant must pursue other remedies. 26 Cyc. 162.

In an action of mandamus to require officers of a community ditch to give relator a specified portion of the waters carried by the ditch, the rights and priorities of the consumers cannot be adjudicated, and the indi-

vidual water users are not necessary or proper parties to the suit. If the rights of the consumers have not been adjudicated or fixed by agreement or contract, and are undertermined and unknown, mandamus will not lie; but the parties must first secure an adjudication of the rights of the consumers or water users. But where it appears, from the application for the writ, that the rights have been fixed by contract, and such rights are known and determined, and the answer of the respondents admits such facts, the writ is properly granted, compelling the commissioners to give to relator the water to which he is entitled. If the rights and interests of the parties to the water carried by the ditch in question were undetermined and unknown, it was the duty of the respondents to have pleaded such facts in their answer to the alternative writ.

[3] Appellants argue that the rights of the individual water users could not be impaired in an action to which they were not made parties and given their day in court. This, of course, is true; but the decree in this case does not attempt to adjudicate their rights, and their rights are not bound or affected by it. If, for any reason, their rights are not in accord with the records of the company, there is nothing to prevent an adjudication of the same. But the individual water users are not complaining of the decree. The complaint is made by the respondents, who do not deny, either in their answer or by evidence adduced upon the hearing that rights of the parties to the use of the water are in accord with the interests of the parties thereto, as shown by the records of the company. Neither do they allege nor prove that the ditch does not carry sufficient water to supply all the rights of the users.

[2] It is further contended that there was a failure to plead or prove that relator's land was of such a nature that additional water could be beneficially applied thereto. The petition, while not, perhaps, as specific as it should have been, alleged that relator was

the "owner of a water right carried through said ditch for irrigation and domestic use upon 20 acres of land of relator hereinafter described." This was followed by a description of the land. There was proof by the secretary of the company to the effect that relator owned 20 acres of land, and moreover no question was raised in the lower court as to the failure of the proof to show the amount of land irrigated by relator. It was apparently assumed by all the parties, upon the trial, that relator was entitled to the water called for by his share in the company, as shown on the company books, and that he had been applying and could apply the same to beneficial use.

[4-9] It is argued that the court erred in requiring the respondents to apportion the upkeep of the ditch irrespective of the location of the lands thus assessed. Sections 5744, 5763, and 5765, Code 1915, the first section being enacted by the Legislature in 1895, and the last two in 1861, read as follows:

"Sec. 5744. All community ditches or acequias shall for the purposes of this article be considered as corporations or bodies corporate, with power to sue or to be sued as such. And every one of said community ditches beginning at the dam or entrance of the water, in continued course to the end of the same, shall be considered as one ditch or acequia only, to be superintended by three commissioners and one mayordomo as now provided by law.   *   *   *"

"Sec. 5763. Every person or persons, being tillers of irrigated lands, who shall have commenced the work on any public acequia in common labor, are and shall be obligated to continue on that work until the completion of the clearing of said acequia."

"Sec. 5765. If any number of laborers, or any persons thereof, having their fields above on such acequias, and having reached them, shall pretend from any cause or causes, reason, or pretext, to abandon their colaborers, he or they shall not be permitted to leave said work of the laborers in common until the completion of the cleansing of the said acequia so commenced to be worked.   *   *   *"

Respondents argue that these sections do not apply to community acequias, because such ditches are not

public acequias; that public acequias are defined by section 5731, Code 1915, enacted in 1852 by the Legislature, which reads as follows:

"All rivers and streams of water in this state, known prior to January 7, 1852, as public ditches or acequias, are established and declared to be public ditches or acequias."

This section was construed by the territorial Supreme Court in the case of Land & Irrigation Co. v. Gutierrez, 10 N. M. 177, 253, 61 Pac. 357, 365, the court saying:

"What is meant by this section is such ditches, acequias or natural water courses used as acequias or natural water courses used as acequias, as have become the subject of private * * * ownership, and upon which labor is expended for the purpose of appropriating the water therefrom and using the same to irrigate the lands of the persons so working thereon."

Community acequias are public acequias within the meaning of section 5731, Code 1915. If this were not true, then we would have no statutory regulation whatever for such ditches, but for many years, and without question, community ditches have been regulated and their affairs conducted in accordance with the statutes of the state.

The statutes of the state above referred to, therefore, requiring all water users to assist in the repair and maintenance of the ditch, and section 5759 providing that "all persons interested in a common ditch or acequia, be they owners or lessees, shall labor thereon in proportion to their land," the question to be determined is as to whether it is competent for the members of a community ditch system to adopt a by-law in contravention of the statute. It is uniformly held that a by-law of a private corporation, or an ordinance adopted by a municipal corporation, in order to be valid must be consistent with the law of the land, and a by-law or ordinance in contravention of a statute of the state is invalid. Fletcher, Cyclopedia Corporations, vol. 1, § 4888, p. 990; Dillon on Municipal Corporations,

§§ 587-589. From this it follows that the court rightly held the by-law in question invalid.

Some complaint is made to the effect that the decree is uncertain and indefinite, but as no objection to the decree was made in the lower court it will not be considered here.

For the reasons stated, the judgment will be affirmed; and it is so ordered.

PARKER, C. J., and RAYNOLDS, J., concur.